FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 18, 2022

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARTHA L.,[1]<br><br>  Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>  Defendant. | No.   4:21-cv-5002-EFS<br><br>**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff Martha L. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ improperly discredited Plaintiff's mental-health symptoms primarily on the grounds that she did not seek more aggressive mental-health treatment and the ALJ failed to develop the record, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 19, denies the Commissioner's Motion for Summary Judgment, ECF No. 22, and remands this matter for further proceedings.

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

### I.  Factual and Procedural Summary

Plaintiff filed a Title 2 application.[2] Her claim was denied initially and on reconsideration.[3] On request, an administrative hearing was then held by telephone before ALJ Jesse Shumway, who took testimony from Plaintiff.[4]

After the hearing, the ALJ issued a written decision denying Plaintiff's disability claim because—although she had the following medically determinable impairments of obesity, gastroesophageal reflux disorder, hypothyroidism, lumbar strain, bipolar disorder, and generalized anxiety disorder—none of these impairments, individually or collectively, were severe.[5] There were no treating or examining opinions of record, but the ALJ found persuasive the reviewing medical opinions finding that Plaintiff did not have a severe physical or mental impairment.[6] The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record.[7] The ALJ found the

---

[2] AR 173–77.

[3] AR 90–104.

[4] AR 31–60.

[5] AR 12–28.

[6] AR 22–23.

[7] AR 20–22.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

statements from Plaintiff's husband and daughter did not provide significant additional detail beyond that found in Plaintiff's allegations.[8]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[9] Plaintiff timely appealed to this Court.

## II.   Standard of Review

A court's review of the Commissioner's final decision is limited.[10] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[11] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] Moreover, because it is the role of the ALJ—and not the court—to weigh conflicting evidence, the court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[13]

---

[8] AR 21.

[9] AR 1–11.

[10] 42 U.S.C. § 405(g).

[11] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[12] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court considers the entire record as a whole,

1
2
3
4         Further, the court may not reverse an ALJ decision due to a harmless error—an error that is inconsequential to the nondisability determination.[14] The party appealing the ALJ's decision generally bears the burden of establishing harm.[15]

### III.  Analysis

**A.  Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for discounting her symptom reports. When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[16] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[17] General findings are insufficient;

---

not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

[14] *Molina*, 674 F.3d at 1111, 1115.

[15] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[16] *Molina*, 674 F.3d at 1112.

[17] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.[18] "The clear and convincing standard is the most demanding required in Social Security cases."[19] Therefore, if an ALJ does not articulate specific, clear, and convincing reasons to reject a claimant's symptoms, the corresponding limitations must be included in the RFC.[20]

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain

---

[18] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[19] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[20] *Lingenfelter*, 504 F.3d at 1035.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

or other symptoms.[21] The ALJ is instructed to "consider all of the evidence in an individual's record" to "determine how symptoms limit ability to perform work-related activities."[22]

At the hearing, Plaintiff testified that her anxiety affects her ability to work because she is unable to concentrate and focus, and that she has some good days and some bad days and it is difficult to know how her anxiety and depression will be until she wakes up each day.[23] She testified that on her good days she can do housework, laundry, and housecleaning, but that on her bad days, she cannot do anything and she requires her two stepsons and husband to help with her six-year-old daughter and housework.[24] She testified that she has about three bad days a week.[25] She has trouble sleeping every night and gets overwhelmed.[26]

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her medically determinable impairments not supported by her course of treatment, inconsistent with her level of activity, not supported by

---

[21] SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).

[22] SSR 16-3p, 2016 WL 1119029, at *2.

[23] AR 44–48.

[24] AR 46.

[25] AR 50.

[26] AR 49–50.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

her reports to medical providers, and inconsistent with the objective medical evidence.[27]

### 1. Course of Treatment

A claimant's course of treatment, including an inadequately explained failure to seek treatment, is a relevant factor for the ALJ to consider when assessing the claimant's symptom reports.[28] Yet, the ALJ must discuss whether the claimant's articulated reasons for not seeking treatment constitute good cause for not doing so.[29]

Here, the ALJ found Plaintiff:

> testified she is able to pay for psychiatric services and fill her medications, and her husband works full-time, so she demonstrates the financial capacity to seek appropriate treatment. . . [S]he and her husband have not spoken about adding her to his insurance policy, and she admitted she has not looked for a counselor who might see her at reduced or no cost.[30]

Because Plaintiff did not seek more aggressive treatment, the ALJ discounted her symptom reports.[31]

---

[27] AR 21–23.

[28] 20 C.F.R. § 404.1529(c)(3).

[29] *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989); SSR 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

[30] AR 21.

[31] AR 21.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

Contrary to the ALJ's finding, the record contains evidence that Plaintiff had financial challenges obtaining medical care, namely mental-health counseling and fully paying for medication. Plaintiff testified that she would "love to see a counselor but again, no insurance" and that the household income was insufficient to pay for all of her medications and she instead relied on free medication samples from her care provider or she went without migraine medication.[32] Consistent with Plaintiff's testimony, the medical records indicate that her treating provider gave her free sample boxes of mental-health medication on at least three occasions and that, although she was interested in participating in counseling, she declined participating in counseling because she was unable to pay for it.[33] In addition, her husband and daughter submitted letters offering similar testimony. For instance, her husband wrote, "As of right now she is only seeing her doctor once every two months because that is all we can afford at the time. We pay cash because [she] doesn't have health insurance, we simply cannot afford it."[34]

On this record, the ALJ's finding that Plaintiff "demonstrates the financial capacity to seek appropriate treatment" is not a clear and convincing reason

---

[32] AR 52–58.

[33] AR 401, 406, 410 (noting that samples of Rexulti were given to patient); AR 416 ("[S]he still has no insurance coverage so she is hesitant to resume counseling.").

[34] AR 299; *see also* AR 300.

supported by substantial evidence.[35] There is no evidence supporting the ALJ's conclusion that since Plaintiff's husband worked full-time, they had the financial capacity to pay for additional mental-health treatment for Plaintiff, even if Plaintiff was named as an insured. In addition, contrary to the ALJ's finding that Plaintiff and her husband had not spoken about adding her to his work insurance, Plaintiff's testimony was that she had talked with her husband, who makes the family's financial decisions since she has difficulties handling finances due to her conditions, when he first obtained his work medical insurance and that he told her it was too expensive to add her to the insurance.[36] In addition, Plaintiff testified that her husband had looked into getting health insurance through the state but they either did not qualify or it was too expensive. There is no evidence in the record contradicting this testimony.

The ALJ also discounted Plaintiff's symptoms because she did not inquire as to whether she could get free mental health counseling. While affordable or free local community resources may be a relevant factor for the ALJ to consider when determining whether a claimant had good cause for not seeking additional

---

[35] AR 21.

[36] AR 56–59. *See also* AR 255–56 (stating that it is "to stressful to pay bills, overwhelming and no desire to keep track of what's happening with the [bank] account" and she can't keep tract [sic] of financial information, my husband does all of our banking").

treatment, the ALJ must consider whether such resources are likely available to the claimant.[37] Here, the ALJ did not discuss what local community resources were available that Plaintiff did not seek, and there is no indication in the medical record that Plaintiff's treating provider educated her about low cost or free mental health counseling.

On this record, the ALJ's finding that Plaintiff's course of treatment did not support her mental-health symptoms is not supported by clear and convincing reasons supported by substantial evidence.

---

[37] *See* SSR 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims (requiring the ALJ to consider whether the individual is unable to afford treatment and does not have access to free or low-cost medical services). *See, e.g.*, Program Operations Manual System (POMS) 23010.011, How to Make a Failure to Follow Prescribed Treatment (FTFPT) Determination (eff. Jan. 3, 2019) ("Follow your local business process to identify potential local community resources (i.e., clinics, charitable organizations, public assistance agencies). In most states, this means you must consult with the DDS public relations officer (PRO), and the PRO will consult directly with the individual regarding any potential assistance."); SSR 18-3p: Titles II and WXVI: Failure to Follow Prescribed Treatment (placing the burden on the claimant to demonstrate why she does not have health insurance to pay for the prescribed treatment or why she failed to obtain treatment at the free or subsidized healthcare provider *if such is available*) (emphasis added).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

2.   Activities of Daily Living

The ALJ also discounted Plaintiff's symptoms because her level of activity did not support her allegations. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[38] Here, relying largely on the statements in Plaintiff's Adult Function Report and some hearing testimony, the ALJ found Plaintiff's ability to perform chores such as cleaning and laundry, prepare meals, drive, shop in public stores for necessities, handle some finances, and provide childcare for a minor child did not support Plaintiff's allegations.[39] Yet, the ALJ failed to meaningfully explain how these activities, many of which can be done in small time increments and at Plaintiff's pleasure, were inconsistent with Plaintiff's testimony that when she has good days she is able to perform her daily activities and care for her child and when her anxiety and depression are bad she is unable to do such activities.[40] The ALJ

---

[38] *Molina*, 674 F.3d at 1113.

[39] AR 21 (citing AR 254–55).

[40] *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from h[is] credibility as to h[is] overall disability.").

also did not discuss Plaintiff's testimony that on her bad days she has help caring for her child from her stepsons and husband. Without further explanation, Plaintiff's level of activity does not serve as a clear and convincing reason to discount her symptom reports.

### 3. Inconsistent Statements and Observations

The ALJ also discounted Plaintiff's symptoms because her "contemporaneous reports to medical providers" and normal mental status examinations did not support her allegations.[41] An ALJ may discount a claimant's symptom reports on the basis of inconsistent statements.[42] But the ALJ must be mindful as to whether a claimant's conflicting symptom reports or exaggerated symptoms were caused by the claimant's impairments.[43] Here, the ALJ did not cite any evidence to support this particular finding as to inconsistent statements. However, in a latter portion of the decision, the ALJ states, "treatment notes do not contain allegations of forgetfulness or memory problems"; "self-isolation is not reported in the medical record"; that Plaintiff reported that her paranoia "improved with treatment"; and

---

[41] AR 21.

[42] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[43] *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

"[s]he denied concentration problems at treatment visits."[44] The challenge with the ALJ's finding is that he relied largely on medical records for Plaintiff's physical conditions, rather than mental-health treatment records, such as the medication management records. The medication management records indicate that Plaintiff was observed as anxious, with dysphoric mood, and as hypomanic with depressive symptoms, and that she reported low energy and motivation.[45] Without a more meaningful discussion addressing relevant mental-health records, the ALJ's decision to discount Plaintiff's symptoms because they were inconsistent with her reports to care providers and normal mental status examinations during appointments largely for physical conditions lacks a clear and convincing reason supported by substantial evidence.

### 4. Consequential Error

These errors permeated the ALJ's entire consideration of Plaintiff's symptom reports, as is reflected by the ALJ's finding that her "passive approach to [mental health] treatment. . . undermines her allegations of serious symptoms."[46] And the ALJ's discounting of Plaintiff's symptoms reports resulted in an RFC that was less restrictive than Plaintiff's reported symptoms.

---

[44] AR 22 (citing AR 358 ("less paranoia"), AR 428 (treatment note for weight loss management), AR 433 (treatment note for epigastric pain)).

[45] AR 357, 381, 386, 403, 407, 411, 415.

[46] AR 21.

### B. Duty to Develop the Record

Although Plaintiff's counsel advised the ALJ at the hearing that he was awaiting receipt of an opinion from the psychiatrist who managed Plaintiff's medication, Plaintiff's counsel did not submit the psychiatrist's opinion along with the required "more robust explanation" for why it would be submitted late.[47]

If the ALJ did not accept a late opinion from Plaintiff's treating source, then the ALJ on this record erred by not developing the record by ordering a psychological examination. This record contains no mental-health opinion from a treating or examining psychologist, but it is apparent based on the medication management records that Plaintiff was impacted by her mental-health conditions.

"The ALJ always has a special duty to fully and fairly develop the record" in order to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[48] This "affirmative responsibility to develop the record"[49] is necessary to ensure that the ALJ's decision is based on substantial evidence.

---

[47] AR 15.

[48] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[49] *Id.* at 1184.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

On this record, without a treating or examining mental-health opinion, the Court "cannot conclude that the ALJ's decision was based on substantial evidence . . . [when taking] the totality of [the claimant's] mental conditions into account."[50]

### C.     Remand for Further Proceedings.

Because either a treating or examining opinion is necessary, further proceedings are necessary before a determination can be made about Plaintiff's eligibility for benefits.[51] If a psychological examination is ordered, the examiner must be given sufficient medical records to allow for a longitudinal perspective.[52] The ALJ may also consider supplementing the record with an opinion from a treating provider. Once the new opinion(s) are available for the ALJ's review, the ALJ is to reevaluate Plaintiff's eligibility for benefits.

### IV.     Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

---

[50] *Id.*

[51] *Tonapetyan v. Halter*, 242 F.3d 1144, 1150–51 (9th Cir. 2001); *Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017).

[52] If a consultative examination is ordered, the examiner is to append the records that the examiner reviewed to the report or clearly identify the records reviewed.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

2. The Commissioner's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT in** favor of Plaintiff **REVERSING and REMANDING** the matter to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 18th day of February 2022.

*Edward F. Shea*
EDWARD F. SHEA
Senior United States District Judge